## JOHN G. MITCHELL *vs.* SAMUEL A. CLAGETT, EXC'R of. NOTLEY SWEENEY.

Where the ruling of the court below, excepted to, sustained the sufficiency of a release to restore the competency of a witness, if it appears the witness *was competent,* this ruling as to the form of the release is immaterial, as the appellant has sustained no injury thereby.

To disqualify a witness on the ground of interest, that interest must not be speculative or conjectural, but must *be shown* to be direct and certain.

A witness was objected to on the ground that his wife would be entitled to an interest in the estate of her mother, who was entitled to a portion of the negroes belonging to the estate of her deceased husband. HELD :

That in the absence of proof that the estate of the mother *was solvent,* the interest of the witness was not shown to be of such a certain and fixed character as to disqualify him.

APPEAL from the Circuit Court for Anne Arundel county.

*Debt,* by the appellant against the appellee, upon a sealed bill alleged to have been executed by the defendant's testator in favor of the plaintiff for $1000, dated the 22nd of March 1852, and payable in six months.

The defendant pleaded:—1st, *non est factum;* 2nd, that at the time of its execution defendant's testator was of unsound mind and incapable of making a valid deed, by reason of disease and bodily infirmity, and that the plaintiff, well knowing this, fraudulently induced and procured him to execute this bond; 3rd, that the plaintiff obtained this bond from the

testator by fraud, covin and misrepresentation; 4th, *payment* by the testator in his·lifetime, and 5th, *payment* by the executor since the testator's death. Issues were joined on all the pleas.

*Exception.* The plaintiff proved the execution of the bond in suit, that Notley Sweeney died in 1852, leaving an estate consisting chiefly of negro slaves, and a will which his widow, Elizabeth Sweeney, renounced. The defendant then proposed to offer evidence, by John Arnold, tending to disprove the due execution of the bond, having first proved that after the death of Notley Sweeney his negroes were sold at public sale by the executor, but exhibited no evidence of any order of the orphans court of Prince Georges county, where the deceased died and letters testamentary were granted, authorising such sale. The witness having stated he was the husband of a daughter of Mrs. Elizabeth Sweeney, who had died before this suit, the plaintiff objected to his competency on the ground of interest in the result of the suit, which objection the court sustained. The defendant then for the purpose of restoring his competency offered the following release, executed by the witness at the trial table :

"For value received, in my own behalf and on behalf of my wife, Ann Eliza Arnold, I do hereby assign all the right, title, interest, estate, claim and demand of every description whatsoever of my said wife and myself, of, in and to the estate of Mrs. Elizabeth Sweeney, widow of Notley Sweeney, deceased, to Samuel A. Clagett, and I do hereby authorise Kirk Patrick Mitchell, administrator of Mrs. Elizabeth Sweeney, to pay over the same to the said Samuel A. Clagett; this assignment to be made without recourse to me, as witness my hand, &c. JOHN ARNOLD."

The plaintiff still objected to the competency of the witness on the ground that the release was not legally sufficient to restore his competency, but the court (BREWER, J.) decided that it was sufficient for that purpose and permitted the witness to testify to the jury, to which ruling the plaintiff excepted.

The record shows that the jury found a verdict for the defendant upon each of the issues. The plaintiff then moved

for a new trial, upon the ground that the verdict was against the weight of evidence on the first three issues, and without evidence on the last two; that the court erred in permitting Arnold to testify without a sufficient release of his interest; that the general verdict is equivalent to finding for the defendant on each several issue, and is irregular and incorrect; that the verdict is in other particulars erroneous, and that was against the instructions of the court.

This motion the court overruled and gave judgment for the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Oliver Miller, J. S. Franklin* and *John M. S. Causin* for the appellant.

The only question raised by the exception is, whether the *release* set out in the record operates to *restore* the competency of a witness who was admitted by defendant to have been interested in the result of the suit, by reason of having married a daughter of the widow of the testator. The defendant *acquiesced* in the ruling that but for the release the witness was incompetent, and he cannot now question its propriety. But if this were not conceded how stands the case? The widow was entitled to one-third of the negroes of her husband, which had not been sold by any competent authority, for by the express terms of the act of 1843, ch. 304, sec. 1, a sale by an executor without authority from the orphans court "is *void,* and no *title passes thereby to the purchaser.*" One-third of these negroes, after payment of debts, became the property of the widow, who died before this suit, and the wife of the witness was entitled to a distributive share of them as distributee of her mother. The husband, under the 4th sec. of the act of 1842, ch. 293, was entitled to their hire and control. By defeating this suit his wife's share of these negroes would be increased. It is clear therefore that he had such a *certain* and *direct* interest in this suit as would render him incompetent. His testimony would go to increase the fund from which he and his wife were to receive a benefit. It is a general and

well established rule that an heir or distributee is not a competent witness in any action "*affecting the estate*." 1 *Greenlf. on Ev.*, sec. 392. 6 *Md. Rep.*, 541, *Melvin vs. Melvin.* But it is said there was no evidence that the testator's estate was *solvent*. But the very fact of the necessity of the release *concedes* an interest flowing to the wife of the witness from the estate. Again, the release itself is "*for value received*" from the executor, and its acceptance was an admission of the solvency of the estate. What did he pay *value* for if it was not for some interest which he purchased? and what interest could it be but the interest which the witness was to receive from the estate of which the purchaser was executor? and how could any such interest exist unless the estate was *solvent*? The same answer is applicable to the objection that there was no evidence that the *widow's* estate was solvent. Again, it is said there is no evidence that the widow died *intestate*. But the release on its face speaks of her *administrator*, which word would not be used without an intestacy.

The question then recurs, did the release *restore* the competency of the witness whose incompetency before its execution was conceded? The negro slaves descended from Sweeney to his widow, and then to the wife of the witness, who would hold her portion of them as her separate property, by the terms of the act of 1842, ch. 304, and their *hire* belonged to her husband. The 5th sec. of this act provides, that slaves thus held can be sold and conveyed only by the *joint* deed of husband and wife, and that too in the mode provided for the conveyance of *real estate*. This release then is clearly inadequate to convey *such negroes*. In *Smith vs. Morgan*, 8 *Gill*, 133, it is said that neither the wife alone, nor the husband and wife conjointly, can at law divest the wife's interest in property which she holds for her separate use, and by the express terms of the act of 1842 this property is made the *separate estate* of the wife. The witness therefore could not release his wife's interest in this estate, and not being able to release *her's* he could not release *his own* which was dependent upon it.

The only other question presented in argument is, that because the jury found for the defendant on the pleas of *payment*

no injury has been done the appellant by the ruling of the court in regard to the release, and therefore the judgment will not be reversed. The case of *Cross vs. Hall,* 4 *Md. Rep.,* 426, is chiefly relied on to sustain this position. But in that case there was no evidence of the execution of the note, and the failure to produce such evidence would warrant the jury in finding for the defendant on the plea of *non assumpsit.* In this the plaintiff *proved the execution of the bond,* and the *onus* of proving payment was therefore on the defendant. The record shows no proof on this point, and this court cannot therefore assume there was such proof. Again, there is no inconsistency between the finding of *non assumpsit* and limitations. A jury might very well say both that a defendant did not promise, and that he did not promise within three years. But how stands the case here? There were five pleas:—1st, *non est factum;* 2nd, *insanity;* 3rd, *fraud;* 4th, *payment* by the testator, and 5th, *payment* by the executor. The jury found a general verdict for the defendant, and this verdict as extended in the record presents this extraordinary inconsistency:—1st, that Sweeney *never executed* the bond; 2nd, that he was insane when he *did execute it;* 3rd, that the plaintiff obtained *its excution* by fraud, and 4th, that *after its execution* it was *twice paid.* As the finding stands the jury are guilty of having committed the greatest imaginable absurdity, and if this court should affirm this judgment upon this *point* it seems to us, with all respect, it would be a *mockery* if not a *perversion* of justice. The defendant may, it is true, *plead* these inconsistent pleas, but when the case comes to *trial* he cannot *sustain* them all; he must elect what course of defence to take. He cannot at the same time say he *never executed* the bond, and, that he has *twice paid* it. It is true he may attempt one defence, and, failing in that, may resort to the other, but he cannot *sustain* both, as the finding in this case makes him do. The only controversy presented by the record relates to the issues upon the *first three* pleas, and when it is brought to the consideration of the highest judicial tribunal in the State, that tribunal is gravely asked to turn the appellant out of court, because the verdict as set out in the record makes

fools of the jury, and greater fools of the testator and his executor, in *twice paying* a bond which was *never executed.* You may search in vain for a parallel case. If upon evidence before them, as appears by the record, the jury found the bond was never executed, they could not find it had been twice paid, and to ask this court, under such circumstances, to *assume* there was proof of payment, is asking too much for human credence.

*Alex. B. Hagner* and *Alex. Randall* for the appellee.

The counsel for the appellant insist that as the court below decided that Arnold was an interested witness, without appeal on our part, we cannot now enquire at all into the nature or extent of his interest, but must strictly confine ourselves to the question of the sufficiency of the release. In our judgment the latter question necessarily involves the consideration of the former, and is inseparable from it. The court here have to decide whether by the error of the court below the appellant's case was prejudiced by the admission of testimony which should have been excluded, because the witness had not released *his interest* in the result of the suit. The first point for the court to consider, therefore, is, *what* was the nature of the interest to be released, an interest in *lands,* in *negroes,* or in *money?* This point must be ascertained before we can determine whether the release is sufficient, for a release which would be sufficient if the interest were only *money,* would be insufficient if it were an interest in *real estate.* How is it possible then for the court to refuse altogether to consider the nature or extent of the supposed interest of the witness, and how can they decide a release to be insufficient if they clearly see that the witness had in fact *no interest at all* to release? The question for this court to decide is, can the reversal benefit the plaintiff? If Arnold was a competent witness, why reverse the judgment because the release was technically imperfect? If his testimony ought to have gone to the jury it matters not whether it went to them because he had no interest, or because he had released his interest. Was it proper testimony *when he delivered it to the jury?* If it was, then the

judgment will not be reversed, *because that testimony was admitted* whether its admission was placed on the right ground or not. 3 *Gill*, 198, *Budd vs. Brooke*. In such a case the court would be wrong to reverse a judgment which they admit to be correct, though arrived at by an unsound train of reasoning. Nothing could be more futile than for this court to say "we think Arnold was *in no manner interested,* but as he signed an *informal* release of *all interest* he might have, *we reverse the judgment.*" The case of *Deakins vs. Hollis,* 7 *G. & J.,* 315, is directly in point. It seems to us, therefore, that the question whether Arnold was really an interested witness is directly before the court.

The first point to be observed in its discussion is, that all witnesses are *presumed to be competent,* and it is incumbent *upon the party objecting* fully to establish the incompetency. 1 *Greenlf. on Ev.,* secs. 390, 425. 6 *Md. Rep.,* 541, *Melvin vs. Melvin.* If he was incompetent from interest it was because he had a certain, vested, legal, present interest in the event of the suit, as distinguished from a doubtful, contingent, uncertain or possible interest in future, and this must be fully proved by the objector. 1 *Greenlf. on Ev.,* secs. 390, 408, 386. 4 *Gill,* 215, *Crawford vs. Brooke.* 3 *G. & J.,* 355, *Watts vs. Garrett.* What was his interest in this suit? He had married a daughter of Sweeney's widow. If Sweeney's estate was *solvent* his widow would be entitled to an interest in the residue. This is the first point to be established by the appellant. Has he established it? Where is the evidence that Sweeney's estate was solvent? There is none in the record. The second point which he must establish is, that the widow died intestate and that her *estate* was *solvent.* There is not the slightest evidence in the record on these points. This court cannot *assume* that her estate was *solvent,* and unless the appellant has proved it his objection to the competency of the witness must be overruled.

But suppose, for the sake of the argument, that Arnold was incompetent by reason of interest, we say the release fully restored his competency. What was the nature of his interest? If it grew out of the right of his wife to receive money or any

personalty, except negroes, from Mrs. Sweeney's estate, the husband could clearly assign it. But assuming that his wife was to receive such *negroes*, he still had a right to assign *his interest*, and if the release was inoperative to assign his *wife's interest*, it was effectual to assign *his own*. The 4th. sec. of the act of 1842, ch. 293, recognises the husband's right to use the negroes and receive their hire, but it has never been doubted by the profession that the husband can sell *his own* interest or *life estate* in such negroes. The *fee-simple* in them can only be conveyed by joint deed of husband and wife, but *his* interest he can certainly convey *alone*, as in the case of *real estate*. The conclusion, that because he "could not release *his wife's* interest he could not release *his own*, which was dependent upon it," is as complete a *non sequitur* as to say a tenant for life cannot sell his life estate in land, because he cannot convey the interest of the reversioner on which his estate depends. The decision in *Smith vs. Morgan*, 8 *Gill*, 133, was not based on the idea of the property being "the *separate property* of the wife," but upon the particular trusts and limitations of the will in that case. But it is clear Mrs. Arnold had no such interest in *negroes* as would prevent her husband from releasing his interest in them. Sweeney had negroes and the widow had none of her own. These negroes were sold by the executor at public sale, and his widow therefore was only entitled to her share of the proceeds in *money*, a part of which descended to her daughter, Mrs. Arnold. As to the objection that such a sale was *void* without the authority of the orphans court, we say this court will presume in favor of the legality of the public acts of an officer of the orphans court, and will therefore conclude he had authority. They will further presume, when the question arises in this collateral way, that inferior tribunals have properly discharged their duty, or that the negroes were sold *by the assent of all parties*, or *under a decree of the circuit court*, in which case no order of the orphans court would be necessary. But *all* Sweeney's estate was not *negroes*, and his widow may not have taken a single one as her share, but may have received other personalty. This point it *was incumbent on the appellant to prove*,

7     v.9

and he has not done so.   If she received no negroes, then her daughter could only have received *money.*

As to the verdict, we say the finding of the jury was not erroneous.   The pleas were neither inconsistent in the eye of the law nor in fact.   They charge in substance that Mitchell by fraud procured the signature of this bond from a man of unsound mind, and therefore that it was never *legally executed,* and afterwards that this fraudulent bond was paid in whole or in part by the obligor in ignorance of his rights, and afterwards paid again in whole or in part by the executor in ignorance of the first payment.   Thus each of these five pleas may be true and perfectly consistent with the others.   How can this court say otherwise?   The jury alone were authorised to decide upon the matter, and they have found the issues upon their oaths.   This very objection of inconsistency was urged below on the motion for a new trial, which was overruled by the judge who heard the whole case.   It seems to us therefore that this court must presume the jury had evidence of payment, as they have so found, and therefore it is unimportant whether the release was sufficient or not.   4 *Md. Rep.,* 426, *Cross vs. Hall.*   1 *Do.,* 115, *Mudd vs. Harper.*   5 *Do.,* 450, *Stewart vs. Spedden.*   We have shown that there is no inconsistency, either in *law* or in *fact,* in these different pleas.   But if there is any evil resulting in these findings *who is to blame for it?*   Why did not the appellant see that the verdict was properly entered?   He had then the right to be heard on the point, but he was silent, because he thought he saw in this seeming informality a mode of setting aside the solemn verdict of a jury, who, after a prolonged trial, rendered a righteous judgment.

Le Grand, C. J., delivered the opinion of this court.

At the trial of this cause the appellant objected to the competency of a witness offered on behalf of the appellee.   The court sustained the objection; whereupon the witness executed a release of all his own and that of his wife's interest in the estate of her mother.   The court held this release to be sufficient to remove the disability, and the witness was examined.

The appellant excepted to the ruling of the court in so far as it adjudged the sufficiency of the release. The question for our determination arises under this exception.

It appears from the record the suit was brought on a sealed note, alleged to have been that of one Notley Sweeney, the testator of the appellee, for $1000, dated the 22nd day of March 1852, payable to the appellant six months after date. The appellant gave evidence of the execution of the note, and also that Notley Sweeney died sometime in the year 1852, after having made his last will and testament; and further, that his wife Elizabeth renounced said will. It was also proven that she died before the institution of this suit. It was also shown that he died possessed of certain negroes, who were sold, but no order of the orphans court directing their sale was given in evidence. The witness objected to is the husband of a daughter of Mrs. Elizabeth Sweeney, the wife of Notley Sweeney. The ground of the objection is, that as his wife would be entitled to an interest in the estate of her mother, who was entitled to a portion of the negroes belonging to the estate of her husband, Notley Sweeney, it was incompetent to him to release the interest of his wife. We are of opinion this objection is not well taken. Although the only question presented by the exception is the sufficiency of the release, yet, if it appear the party was a competent witness, it matters not what is the form of the release, for none in such a case was required, and the party has no right to complain, for he has not sustained any injury.

We are of opinion the interest, if he had any, of the witness, was not shown to be of that certain and fixed character which, under the decisions of this court, is required to disqualify him. There is no evidence whatever to show the estate of Elizabeth Sweeney to be solvent. To disqualify the witness on the score of interest, that interest should not be speculative or conjectural, but should be shown to be direct and certain, otherwise it goes only to his credit before the jury. This question was fully considered in the case of *Melvin vs. Melvin*, 6 *Md. Rep.*, 548, and the authorities were therein very thoroughly examined. See also *Townshend vs. Townshend*, 6

*Md. Rep.*, 295. An examination of the principles therein laid down would, under the facts presented by this record, allow of the competency of the witness Arnold, however much they might impair his credit before the jury. The whole tendency of the decisions, since the days of Lord Mansfield, has been, to remove objections to the competency of witnesses. In the case before us there is no sufficient basis for the objection to rest upon. It nowhere appears that Elizabeth Sweeney had an estate from which her daughter could derive anything, and, *a fortiori*, it is but pure conjecture to suppose the husband of that daughter could inherit anything from her. We think the witness competent, and whether or not the release was in proper form, in a case in which a wife had an interest in negroes, is a matter of no importance, for in this one the appellant suffered no injury from the ruling of the court, and we accordingly affirm the judgment.

*Judgment affirmed.*